## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

In re:

**ERICK F. SEAMSTER**
**AKA RICK F. SEAMSTER**
**ANGELA A. P. SEAMSTER**
**AKA ANGELA A. POOLE**
**AKA ANGELA POOLE SEAMSTER**
**AKA ANGELA M. ARMSTRONG,**

**CHAPTER 13**

Debtors.

**CASE NO. 13-31322-DOT**

**BANK OF AMERICA, N.A.,**

Plaintiff/Movant.

**vs.**

**ANGELA A. P. SEAMSTER**
**ROBERT E. HYMAN, TRUSTEE,**

Defendants.

### MOTION TO APPROVE LOAN MODIFICATION AFTER CONFIRMATION
### PURSUANT TO LOCAL BANKRUPTCY RULE 6004-4

**NOTICE**

YOUR RIGHTS MAY BE AFFECTED.  YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE IN THIS BANKRUPTCY CASE.  (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)

IF YOU DO NOT WISH THE COURT TO GRANT THE RELIEF SOUGHT IN THE MOTION, OR IF YOU WANT THE COURT TO CONSIDER YOUR VIEWS ON THE MOTION, THEN WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE OF THIS MOTION, YOU MUST FILE A WRITTEN RESPONSE EXPLAINING YOUR POSITION WITH THE COURT AND SERVE A COPY ON THE MOVANT.  UNLESS A WRITTEN RESPONSE IS FILED AND SERVED WITHIN THIS TWENTY-ONE (21) DAY PERIOD, THE COURT MAY DEEM OPPOSITION WAIVED, TREAT THE MOTION AS CONCEDED, AND ISSUE AN ORDER GRANTING THE REQUESTED RELIEF WITHOUT FURTHER NOTICE OR HEARING.

IF YOU MAIL YOUR RESPONSE TO THE COURT FOR FILING, YOU MUST MAIL IT EARLY ENOUGH SO THE COURT WILL RECEIVE IT ON OR BEFORE THE EXPIRATION OF THE TWENTY-ONE (21) DAY PERIOD.  IF A RESPONSE IS FILED, YOU WILL ALSO NEED TO ATTEND A HEARING TO BE SCHEDULED AT A LATER DATE.  YOU WILL RECEIVE SEPARATE NOTICE OF HEARING.  IF NO TIMELY RESPONSE HAS BEEN FILED OPPOSING THE RELIEF REQUESTED, THE COURT MAY GRANT THE RELIEF WITHOUT HOLDING A HEARING.

ATTEND THE PRELIMINARY HEARING SCHEDULED TO BE HELD ON JUNE 12, 2013 AT 12:00 PM IN THE U. S. BANKRUPTCY COURT, RICHMOND, 701 E. BROAD STREET, COURTROOM 5100, RICHMOND, VA 23219.

Michael T. Freeman, Esquire

Counsel for Plaintiff

Samuel I. White, P.C.

1804 Staples Mill Road, Suite 200

Richmond, VA 23230

State Bar #65460

(804) 290-4290

**NOTICE FROM SAMUEL I. WHITE, P.C.**

PURSUANT TO THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT, WE ADVISE YOU THAT SAMUEL I. WHITE, P.C., COUNSEL FOR THE PLAINTIFF, IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE INDEBTEDNESS REFERRED TO HEREIN, AND ANY INFORMATION WE OBTAIN FROM YOU WILL BE USED FOR THAT PURPOSE.

## MOTION TO APPROVE LOAN MODIFICATION AFTER CONFIRMATION PURSUANT TO LOCAL BANKRUPTCY RULE 6004-4

The Motion of Bank of America, N.A., by Counsel, hereby moves the Court for authority to modify the existing lien pursuant to 11 U.S.C. Section 364 and 1304(b), Federal Rules of Bankruptcy Procedure 4001(c), Local Bankruptcy Rule 6004-4, and Richmond Division General Order No. 12-1.   In support thereof, Movant represents unto the Court:

1.    This Court has Jurisdiction over this proceeding pursuant to 28 U.S.C. Sections 157 and 1334, and that this matter is a core proceeding.

2.    The Debtors filed a Petition under Chapter 13 of the Bankruptcy Code on March 12, 2013.

3.    The Amended Chapter 13 Plan, filed May 3, 2013, has not yet been confirmed by the Court.

4.    Upon information and belief, Movant is the holder and/or servicer of a certain Deed of Trust Note dated May 5, 2011, which Note is secured by a Deed of Trust of even date therewith and duly recorded.

5.    Movant seeks approval from the Court in order to modify the Debtors existing loan secured by a lien on the real property located at 11713 Black Alder Drive, Moseley, VA 23120, which property is more particularly described as:

> ALL that certain lot, piece or parcel of land, with improvements and appurtenances thereon, situate, lying and being in Chesterfield County, Virginia, and being known, numbered and designated as Lot 57, Section B, Magnolia Green, as shown on that certain plat entitled "Magnolia Green, Section B, Matoaca District, Chesterfield County", which said plat is duly recorded in the Clerk's Office of the Circuit Court of Chesterfield County, Virginia, in Plat Book 186, pages 12 through 19.
>
> BEING the same real estate conveyed to Angela A. Poole by deed from Royal Dominion Homes, Inc., a Virginia corporation, dated May 5, 2011 and recorded simultaneously herewith.

93-005636-13/mds

6.      The terms of the proposed loan modification are as follows:

     a.      Debtors shall make an upfront contribution in the amount of $1,699.38 which is due on or before March 23, 2013.

     b.      Current principal and interest payment amount of $1,370.10 will be reduced to $1,243.67.   This payment amount is subject to any change in the escrow portion, which changes shall be noticed by letter from Plaintiff.

     c.      Current interest rate of 4.75% will be reduced to 3.75%.

     d.      Current principal balance of $256,547.79 will be increased to $268,543.36 as $11,995.57 in fees, costs, escrow and interest have been capitalized.

     e.      The first payment under the modification at the reduced amount shall begin April 1, 2013.

     f.      Current maturity date of the loan of May 1, 2041 will be extended to March 1, 2043.

7.      Movant requests authority to modify the Debtors lien as stated herein.

8.      Fees and costs in the amount of $500.00 have been incurred for the preparation and filing of this Motion.

9.      Upon successful modification, Movant states that it will amend any arrearage claim being paid by the Chapter 13 Trustee to the extent such arrears were included in the loan modification

**WHEREFORE**, Movant prays that this Court enter an Order: (1) permitting the Movant to modify the current lien as set forth herein, and (2) for such other and further relief as the Court deems proper.

BANK OF AMERICA, N.A.

By: **/s/ MICHAEL T. FREEMAN**
Of Counsel
Samuel I. White, P. C.
Michael T. Freeman, Esquire, VSBN 65460
1804 Staples Mill Road, Suite 200
Richmond, VA 23230
Tel: (804) 290-4290
Fax: (804) 290-4298
mfreeman@siwpc.com

93-005636-13/mds

CERTIFICATE

I hereby certify that a true copy of the foregoing Motion was served by regular mail or email this 8th day of May, 2013 on all necessary parties including Robert E. Hyman, Trustee, Post Office Box 1780, Richmond, VA 23218-1780; Pia J. North, Esquire, Counsel for Debtors, 5913 Harbour Park Drive, Midlothian, VA 23112; and Erick F. Seamster and Angela A. P. Seamster, Debtors, 11713 Black Alder Drive, Moseley, VA 23120.

**/s/ MICHAEL T. FREEMAN**

Samuel I. White, P. C.

93-005636-13/mds

**UNITED STATES BANKRUPTCY COURT**
**Eastern DISTRICT OF VIRGINIA**
**Richmond DIVISION**

**In re:**

**Erick F. Seamster**
**Angela A. P. Seamster,**
                                                    **CHAPTER 13**

        **DEBTORS**

                                                    **CASE NO. 13-31322-DOT**


<u>**SUMMARY OF THE PROPOSED LOAN MODIFICATION**</u>

|  | <u>Original Loan</u> | <u>Modified Loan</u> |
|---|---|---|
| Principal Amount | $256,547.79 | $268,543.36 |
| Interest Rate | 4.75% | 3.75% |
| Term or Maturity Date | May 1, 2041 | March 1, 2043 |
| Monthly Payment | $1,370.10 P&I | $1,243.67 P&I |


☐     2.     The modified loan includes future payment changes or balloon payments. The terms of any such future payment changes or balloon payments are:


☐     3.     The modification results in a higher monthly payment. The source(s) of the funds used to make that payment is/are:


☒     4.     The modification results in a lower monthly payment. Choose one of the following:

      ☒ a. The amount of future plan payments will be increased.
      ☐ b. The amount of future plan payments will not be increased.

Recording Requested by

Bank of America, N.A.
WHEN RECORDED MAIL TO:

Bank of America, N A.
1001 Liberty Avenue, Suite 675
Pittsburgh, PA 15222

This document was prepared by Bank of America, N A.

See Exhibit B for assignments of record if applicable

Space Above for Recorder's Use

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement (the "Agreement"), made on February 21, 2013
between ANGELA A POOLE (the "Borrower(s)") and Bank of America, N A , Original
Lender/Beneficiary Lender or Servicer ("Lender"), amends and supplements that certain
(Mortgage/Deed of Trust) (the "Security Instrument") dated the 5th of May, 2011 which
covers the real and personal property described in the Security Instrument and defined
therein as the 'Property' (See Exhibit A for Legal Description if applicable), located at
11713 BLACK ALDER DRIVE, MOSELEY, VA 23120.

The real property described being set forth as follows:

### SAME AS IN SAID SECURITY INSTRUMENT

In consideration of the mutual promises and agreements exchanged, the parties hereto
agree to modify the Security Instrument as follows:

The fifth [and sixth] sentence[s] of the first paragraph of the Security Instrument is[are]
hereby amended to read in its[their] entirety as follows:

Borrower owes Lender the principal sum of two hundred sixty-eight thousand five
hundred forty-three and 36/100, (U.S. Dollars) ($268,543.36). This debt is evidenced
Borrower's note dated the same date as the Security Instrument, as amended and
restated as of the date herewith ("Note"), which provides for monthly payments, with the
full debt, if not paid earlier, due and payable on March 1, 2043. The Borrower[s] shall
comply with all other covenants, agreements and requirements of the Security
Instrument. Nothing in this Agreement shall be understood or construed to be a
satisfaction or release in whole or in part of the Security Instrument. Except as
otherwise specifically provided in this Agreement, the Security Instrument shall remain
unchanged, and the Borrower[s] and Bank of America, N.A. shall be bound by, and
comply with all of the terms and provisions thereof, as amended by this Agreement, and

WDGGovLnModAgree                    Page 1 of 4              WDGLMAGM 7382 07/20/2007

the Security Instrument shall remain in full force and effect and shall continue to be a
first lien on the above-described property. All capitalized terms not defined herein shall
have the same meanings as set forth in the Security Instrument

SIGNED AND ACCEPTED THIS ___19___ DAY OF ___March___

BY

_Angela A. Poole_____                _____

ANGELA A POOLE

_____                _____


_____                _____


(ALL SIGNATURES MUST BE ACKNOWLEDGED)

State of ___VA___, County of _Chesterfield___ On this _19th_ day
of _March 2013_ before me the undersigned, a Notary Public in and for said State,
personally appeared ANGELA A POOLE known to me, or proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
foregoing instrument and acknowledged
that ___she___ executed the same.

Witness my hand and official seal

_Ryan H_____ Notary Signature

_Ryan Hill_____ Notary Public Printed Name Place Seal Here

_August 31, 2015_____ Notary Public Commission Expiration Date

WDGGovLnModAgree                Page 2 of 4                WDGLMAGM 7382 07/20/2007

**********************************************************************************************************

As evidenced by their signatures below, the Co-Owner(s) consent to this Modification of
the Mortgage.

**CO-OWNER(S)**

_____    Date: _____
Co-Owner(s) Signature

_____
Co-Owner(s) Name (typed or printed)

STATE OF _____

COUNTY OF _____

On _____ before me, _____

Notary Public, personally appeared _____
personally known to me (or proved to me on the basis of satisfactory evidence) to be
the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signatures(s) on the instrument the person(s), or
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.


_____ Notary Signature

_____ Notary Public Printed Name Place Seal Here

_____ Notary Public Commission Expiration Date

**DO NOT WRITE BELOW THIS LINE**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THIS SECTION IS FOR INTERNAL Bank of America, N.A. USE ONLY

Bank of America, N.A., for itself or as successor by merger to BAC Home Loans
Servicing, LP
        By: Urban Settlement Services, LLC, its attorney in fact

By: _____        Dated   March 28, 2013

        Name. Andre Bandelier
        Title · Assistant Secretary

_____[Space below this line for Acknowledgement]_____

STATE OF  Colorado
COUNTY OF Broomfield

On 3/28/2013 before me, Phillip Her _____ Notary Public, personally

appeared _____ Andre Bandelier _____

personally known to me (or proved to me on the basis of satisfactory evidence) to be
the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ Notary Signature

Phillip Her _____ Notary Public Printed Name Place Seal Here

December 27, 2015 ____ Notary Public Commission Expiration Date

PHILLIP HER
NOTARY PUBLIC, STATE OF COLORADO
My Comm. Expires December 27, 2015

WDGGovLnModAgree            Page 4 of 4            WDGLMAGM 7382 07/20/2007

11802 Ridge Parkway, Suite 100-HRM
Broomfield, CO 80021

**Notice Date: February 21, 2013**

ANGELA A POOLE

**Account No.:** ▇▇▇▇▇▇

**Property Address:**

11713 BLACK ALDER DRIVE
MOSELEY, VA 23120

11713 BLACK ALDER DRIVE
MOSELEY, VA 23120

---

**ABOUT YOUR LOAN**

## COMMITMENT TO MODIFY MORTGAGE

Account Number:
Property Address:

▇▇▇▇▇▇    11713 BLACK ALDER DRIVE
MOSELEY, VA 23120

Original Note Amount:            $262,648 00
Date of original mortgage:        5th of May, 2011
(The foregoing is called the "Mortgage")

---

**WHAT THIS MEANS**

This letter constitutes a commitment to modify the Mortgage (identified above), subject to the terms and conditions stated below. This letter contains our offer, and it permits you to accept this offer. When signed by you, this letter will constitute your agreement to these terms and conditions.

Our records indicate the Mortgage is currently in default. Although we are willing to modify the loan as described in this letter, please be advised that we will continue to pursue collection action. This action may include foreclosure. Upon completion of the modification process, which means all of the terms of this Commitment will have been met, your loan will be deemed current and we will cease collection activity on your loan. However, if you fail to sign this commitment or if you fail to perform as required in this commitment, we will complete our collection action, including foreclosure if necessary

---

**WHAT YOU NEED TO DO**

If you want to accept this commitment, you must sign this commitment and deliver it to Bank of America, N.A. by March 23, 2013. Failure to do so will result in the automatic withdrawal by Bank of America, N A of the offer to modify without further notice

## OFFER FOR MODIFIED MORTGAGE

█████████████████

We hereby offer to modify the Mortgage as follows. It will be called the "Modified Mortgage":

### Section A. Delinquent Balance.

The following shows your current delinquent balance as of the 1st of March, 2013 This reflects the total amount needed to bring your loan current  The proposed modification will cure the below delinquency and bring your loan current, however, it may also increase your monthly payment

| | |
|---|---|
| Delinquent Interest accrued from July 1, 2012 to March 1, 2013 | $8,086.54 |
| Fees and Costs: | $0.00 |
| Delinquent Escrow: | $3,909.03 |
| Total Amount to be added to your Principal Balance: | $11,995.57 |

The NEW FIXED interest rate will be. 3.750%
The new modified principal balance will be: $268,543.36

The first regular monthly payment on the Modified Mortgage will begin on April 1, 2013 and the new payment amount will be $1,699.38. All other terms and conditions of the Mortgage will remain the same for the Modified Mortgage, including but not limited to provisions for late fees and Bank of America, N A.'s right to pursue collection action for the default amount (including foreclosure) Please note that your total monthly payment is still subject to vary if your total monthly escrow payment increases subject to the terms of the mortgage.

The executed documents must be in our office on or before March 23, 2013, or such other date as we may choose at our sole discretion. In order to modify the Mortgage on that date, you must send the executed documents to: 11802 Ridge Parkway, Suite 100-HRM, HOME RETENTION, Broomfield, CO 80021, If you have questions, Loan consultants are standing by from 8·00 AM until 9.00 PM CT Monday through Friday, and 8·00 AM until 3:00 PM CT on Saturday except holidays at 1.800.669 6650.

All borrowers, guarantors, endorsers or sureties on the original Mortgage must sign the Modified Mortgage and any other documents that we require. Any co-owner who was not a borrower on the original loan must sign the Modified Mortgage to consent to the modification, but will not become liable for repayment of the loan due to this consent

**Section B. Contingencies.** This offer is contingent on the following: Bank of America, N.A.'s offer to modify your mortgage is contingent upon Bank of America, N.A.'s verification that the title to the subject property is free from any defect, encumbrance, unauthorized conveyance or any other irregularity. A title search of the subject property will be initiated by Bank of America, N.A. upon your return of the executed Commitment to Modify Mortgage and the Modification Agreement. In the event the title search, or any other information, indicates any title irregularity, including but not limited to any unauthorized conveyance, or any superior or subordinate lien(s), whether voluntary or involuntary, the Commitment to Modify Mortgage and the Modification Agreement and their terms shall not be effective, binding, or enforceable against Bank of America, N.A., and Bank of America, N.A.'s offer to modify your mortgage shall be immediately revoked without further notice. Upon notification of a filing for protection under a Bankruptcy Stay, this Agreement will be terminated. This includes the filing by any party that has or may have interest in the property.

**Section C. Remit the First Payment Due under the modified terms in the amount of $1,699.38 in CERTIFIED CHECK OR MONEY ORDER. Please use the enclosed self addressed envelope to provide payment.**

| | |
|---|---|
| First New Monthly Payment: | $1,699.38 |
| Interest: | $8,086.54 |
| Fees. | $0.00 |
| Escrow | $3,909 03 |
| **Total Amount Due with Executed Agreement:** | $1,699.38 |

If you want to accept the offer for a Modified Mortgage upon the terms and conditions above, you must agree by signing the enclosed Modification Agreement which follows this commitment. Please note that the Modification Agreement must be properly notarized. The acceptance must be signed by each borrower and must be returned to us by March 23, 2013, otherwise, the offer will expire.

---

**THANK YOU FOR YOUR BUSINESS**

**Bank of America, N.A.** appreciates all your efforts and cooperation in this matter. If you have questions, Loan consultants are standing by from 8:00 AM until 9.00 PM CT Monday through Friday, and 8:00 AM until 3:00 PM CT on Saturday except holidays at 1.800 669.6650

## ACCEPTANCE OF OFFER FOR MODIFIED MORTGAGE

We(I) are the borrower(s) on the Mortgage identified above. We agree to or acknowledge the following·

We accept all of the terms and conditions stated in the offer. We have failed to pay the Mortgage in accordance with its terms, and are now in default on the Mortgage. We acknowledge that this commitment for Modified Mortgage, even when signed by Bank of America, N.A. and us, will not prevent or prohibit Bank of America, N.A. from continuing collection action. Therefore, in the event we sign this commitment, but fail to fulfill any or all of its terms and conditions, then Bank of America, N.A. may complete any collection action already commenced without further notice to us, including foreclosure. This commitment will not be considered a waiver of or defense to lender's right to commence or continue any collection action. The terms of the Modified Mortgage will be as stated in Section A above. We will sign any documents necessary to complete the Modified Mortgage. We acknowledge that this commitment is contingent as provided in Section B and Section C of Bank of America, N A.'s offer. Bank of America, N.A. shall determine whether the contingencies have been satisfied. If the new principal amount of the Modified Mortgage is more than the existing principal balance of the Mortgage, then we understand that amounts due such as unpaid interest, taxes, insurance or expenses have been added to the principal amount under the Modified Mortgage. The date for signing the documents and paying the amounts due will be March 23, 2013, or such other date that Bank of America, N.A. may select. All representations made by us pursuant to our request for the Modified Mortgage are true and have been and will be relied upon by Bank of America, N.A , and any breach of the representations will give Bank of America, N.A. the right to terminate this commitment and could result in the pursuit of other right and remedies by Bank of America, N A.

I/We am/are now occupying the property as my/our primary place of residence. We have had the opportunity to consult with legal and/or tax counsel prior to agreeing to the foregoing, and have willingly agreed to these terms and conditions whether or not we elected to retain such counsel.

As evidenced by the signature below, the Borrower and the Lender agree to the foregoing.

_____        _____
ANGELA A POOLE

_____        _____
Date                                    Date

# Bank of America

## Home Loans

Bank of America, N.A.
11802 Ridge Parkway, Suite 100-HRM
HOME RETENTION
Broomfield, CO 80021

Notice Date. February 21, 2013

ANGELA A POOLE
11713 BLACK ALDER DRIVE
MOSELEY, VA 23120



Property Address:
11713 BLACK ALDER DRIVE
MOSELEY, VA 23120

### AMENDED AND RESTATED NOTE
### State of Virginia

Origination Date: 5th of May, 2011

**1.  PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means Bank of America, N.A. and its successors and assigns.

**2.  BORROWER'S PROMISE TO PAY INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of two hundred sixty-eight thousand five hundred forty-three and 36/100 (Dollars U S ) $268,543 36 plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of three and 75/100, (3.750%) per year until the full amount of principal has been paid.

**3.  PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4.  MANNER OF PAYMENT**

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on April 1, 2013. Any principal and interest remaining on March 1, 2043 will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made to Payment Processing PO Box 650070 Dallas, TX 75265, or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U S $1,243 67. This amount will be part of a larger monthly payment required by the Security Instrument that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge          ☐ Growing Equity Allonge          ☐ Other [specify]

**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payments unless Lender agrees in writing to those changes.

**6. BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of 4.00% of the overdue amount of each payment

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults.

This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the Principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the right of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address Any notice that must be given to Lender under this Note will be given by first- class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, borrower accepts and agrees to the terms and covenants contained in this Note.

**10. GROUNDS FOR ACCELERATION OF DEBT**

    **(A) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by the Security Instrument and due under this Note if:
(i) Borrower defaults by failing to pay in full any monthly payment required by this Note and the Security Instrument prior to or on the due date of the next monthly payment, or (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in the Security Instrument securing this Note

    **(B) Sale Without Credit.** Lender shall, if permitted by applicable law (including section 341 (d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U S C. 1702j-3(d) and with the prior approval of the Secretary, require immediate payment in full of all the sums due under this Note and secured by the Security Instrument if:
(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been in accordance with the requirements of the Secretary.

    **(C) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payment, Lender does not waive its right with respect to subsequent events.

    **(D) Regulations of HUD.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and foreclosure if not paid. This Note and the Security Instrument do not authorize acceleration of foreclosure if not permitted by regulations of the Secretary.

    **(E) Mortgage Not Insured.** Borrower agrees that should the Security Instrument and this Note secured thereby not be eligible under the National Housing Act within 60 days from the date hereof, Lender may, at its option and notwithstanding anything in paragraph 10, require immediate payment in full of all sums secured by the Security Instrument  A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date thereof, declining to insure the Security Instrument and this Note secured thereby, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by lender when the unavailability of insurance is solely due to Lender's failure to remit mortgage insurance premium to the Secretary.

BY SIGNING BELOW, borrower accepts and agrees to the terms and covenants contained in this Note

ANGELA A POOLE                    Dated  3. /9./3



CERTIFIED TRUE COPY
NOTE

Commonwealth of Virginia



Acct # ███████████ 1
Min # ████████████████
FHA Case No.
████████████████



May 05, 2011
[Date]

11713 BLACK ALDER DRIVE
MOSELEY, VA 23120
[Property Address]

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
FULTON BANK, N.A.

and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of Two Hundred Sixty Two
Thousand Six Hundred Forty Eight And Zero/100

Dollars (U.S. $ 262,648.00             ), plus interest, to the order of Lender. Interest will be charged on unpaid principal,
from the date of disbursement of the loan proceeds by Lender, at the rate of Four and three quarters
percent (             4.750 %) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date
as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

**(A)  Time**
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
June 01, 2011     . Any principal and interest remaining on the first day of May, 2041             , will be due
on that date, which is called the "Maturity Date."

**(B)  Place**
Payment shall be made at ONE PENN SQUARE, LANCASTER, PA 17602
                                          or at such place as Lender may designate in writing
by notice to Borrower.

**(C)  Amount**
Each monthly payment of principal and interest will be in the amount of U.S. $ 1,370.10              . This
amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest
and other items in the order described in the Security Instrument.

**(D)  Allonge to this Note for payment adjustments**
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of
the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of
this Note. [Check applicable box]

☐ Graduated Payment Allonge   ☐ Growing Equity Allonge   ☐ Other [specify]

FHA Virginia Fixed Rate Note - 10/95

-1R(VA) (0404).01
VMP Mortgage Solutions, Inc. (800)521-7291

Page 1 of 3


Represents Redacted Information

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four And Zero/100              percent (              4.000 %) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor and waive the homestead exemption. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.



VMP-1R(VA) (0404).01                                   Page 2 of 3

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Angela A. Poole_ _____ (Seal)     _____ (Seal)
ANGELA A POOLE              -Borrower                              -Borrower

_____ (Seal)     _____ (Seal)
                         -Borrower                              -Borrower

_____ (Seal)     _____ (Seal)
                         -Borrower                              -Borrower

_____ (Seal)     _____ (Seal)
                         -Borrower                              -Borrower

                                                    _[Sign Original Only]_

This is to certify that this is the Note described in and secured by a Deed of Trust dated May 05, 2011
                        , on the Property located in  MOSELEY                          , Virginia.

My Commission Expires: 12-31-12          _Kimberly Surratt_   #143790
                                         Notary Public

PAY TO THE ORDER OF **BANK OF AMERICA N.A.**
WITHOUT RECOURSE
FULTON BANK, N.A.
_Mary Davis_
MARY DAVIS
SHIPPING MANAGER



VMP-1R(VA) (0404).01                    Page 3 of 3

BOOK 9848 PAGE 0942

Recording Requested By:
Bank of America
Prepared By:
Diana De Avila
1800 Tapo Canyon Road
Simi Valley, CA 93063
800-444-4302
When recorded mail to:
CoreLogic
Mail Stop: ASGN
1 CoreLogic Drive
Westlake, TX 76262-9823

G-Pin:    707-67-30-64-200-000
Property Address:
11713 Black Alder Dr
Moseley, VA 23120-1581

C  7/20/2012

This space for Recorder's use

MIN #:         MERS Phone #:  888-679-6377

## NOTICE OF ASSIGNMENT OF DEED OF TRUST

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., the undersigned holder of a Deed of Trust (herein "Grantor") whose address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 does hereby grant, sell, assign, transfer and convey unto BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOAN SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP (herein "Grantee") whose address is C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:       FULTON BANK, N.A.
Made By:               ANGELA A POOLE
Original Trustee:      RESOURCE SERVICE CORPORATION
Date of Deed of Trust: 5/5/2011      Original Loan Amount: $262,648.00

Recorded in Chesterfield County, VA on: 5/6/2011, book 9411, page 0101 and instrument number 016056

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
7/27/12

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By: _____

Aida Duenas
Assistant Secretary

State of California
County of Ventura

On  July 27, 2012  before me,  Eric Way _____, Notary Public, personally appeared  Aida Duenas _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



ERIC T. WAY
Commission # 1835518
Notary Public - California
Los Angeles County
My Comm. Expires Feb 7, 2013

Notary Public:  Eric Way _____    (Seal)
My Commission Expires:  Feb 7, 2013

INSTRUMENT #33531-540
RECORDED IN THE CLERK'S OFFICE OF
CHESTERFIELD ON
AUGUST 9, 2012 AT 08:29AM

JUDY L. WORTHINGTON, CLERK
RECORDED BY: LCB

.BOOK 9411 PAGE 0102

Exhibit

B

3

Return To:

FULTON BANK, N.A.
4429 Bonney Road, Suite 310
Virginia Beach, VA 23462
Attn: Post Closing

Prepared by:
Robin Privette
4429 Bonney Road, Suite 310
VIRGINIA BEACH, VA 23462

Tax Map Reference #:

RPC/Parcel ID #:
707-673-06-42-00000

——— [Space Above This Line For Recording Data] ———

Commonwealth of Virginia

# DEED OF TRUST

| FHA Case No. |
|---|
|  |

MIN

THIS DEED OF TRUST ("Security Instrument") is made on May 05, 2011
The Grantor is ANGELA A POOLE

("Borrower"). The trustee is RESOURCE SERVICE CORPORATION
, a resident of the Commonwealth of Virginia, whose full
residence or business address is 4429 BONNEY ROAD, VIRGINIA BEACH, VA 23462
, and

a resident of the Commonwealth of Virginia, whose full residence or business address is

trustees (any one of whom may act and who are referred to as
("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee
for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing
under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI
48501-2026, tel. (888) 679-MERS. FULTON BANK, N.A.

("Lender") is organized and existing under the laws of UNITED STATES OF AMERICA

FHA Virginia Deed of Trust with MERS - 4/96
Wolters Kluwer Financial Services
VMP®-4N(VA) (0601).01          Amended 7/96
Page 1 of 8                Initials:


Represents Redacted Information

BOOK 9411 PAGE 0103

has an address of ONE PENN SQUARE. LANCASTER. PA  17602
. Borrower owes Lender the principal sum of
Two Hundred Sixty Two Thousand Six Hundred Forty Eight And Zero/100
Dollars (U.S. $262,648.00      ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on
May 01, 2041                    . This Security Instrument secures to Lender: (a) the repayment of
the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b)
the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this
Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security
Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust,
with power of sale, the following described property located in County/City of CHESTERFIELD      ,
Virginia:

  BEING the same premises more fully described in the attached legal description and made
  a part hereof .

which has the address of 11713 BLACK ALDER DRIVE                      [Street]
MOSELEY                                  [City], Virginia 23120        [Zip Code]
("Property Address");
    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the
"Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by
Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for
Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including,
but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender
including, but not limited to, releasing or canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the
right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of
record. Borrower warrants and will defend generally the title to the Property against all claims and demands,
subject to any encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform
covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real
property.
    Borrower and Lender covenant and agree as follows:
    UNIFORM COVENANTS.
    1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and
interest on, the debt evidenced by the Note and late charges due under the Note.
    2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly
payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a)
taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground
rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the
Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development
("Secretary"), or in any year in which such premium would have been required if Lender still held the Security
Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance
premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance
premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the
Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums
paid to Lender are called "Escrow Funds."

VMP®-4N(VA) (0801).01                    Page 2 of 8                     Initials: ___

BOOK 9411 PAGE 0104

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue

VMP®-4N(VA) (0801).01                    Page 3 of 8                    Initials: 

BOOK 94 1 1 PAGE 0 1 0 5

hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or



VMP®-4N(VA) (0803).01                    Page 4 of 8                    Initials: _____

BOOK 9411 PAGE 0106

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint



Initials: 

BOOK 9411 PAGE 0107

and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.




Initials: _____

BOOK 9411 PAGE 0108

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower (and owner of the Property, if a different person) notice of sale in the manner prescribed by applicable law. Trustee shall give public notice of sale by advertising, in accordance with applicable law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with applicable law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of      5.000 % of the gross sale price and reasonable attorneys' fees; (b) to the discharge of all taxes, levies and assessments on the Property, if any, as provided by applicable law; (c) to all sums secured by this Security Instrument; and (d) any excess to the person or persons legally entitled to it. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Identification of Note.** The Note is identified by a certificate on the Note executed by any Notary Public who certifies an acknowledgment hereto.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider          ☐ Growing Equity Rider          ☒ Other [specify]  Legal Description
☒ Planned Unit Development Rider   ☐ Graduated Payment Rider

Initials: 

BOOK 9411 PAGE 0109

NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____            *Angela A. Poole*               (Seal)
                                     ANGELA A POOLE                 -Borrower

_____            _____      (Seal)
                                                                   -Borrower

_____ (Seal)     _____      (Seal)
                         -Borrower                                 -Borrower

_____ (Seal)     _____      (Seal)
                         -Borrower                                 -Borrower

_____ (Seal)     _____      (Seal)
                         -Borrower                                 -Borrower

COMMONWEALTH OF VIRGINIA,                       Henrico       County, ss:
The foregoing instrument was acknowledged before me this May 05. 2011
by ANGELA A POOLE

My Commission Expires: 12-31-12
Notary Registration Number: 143790

Notary Public

VMP®-4N(VA) (0801).01                Page 8 of 8

BOOK 9411 PAGE 0110

21

# PLANNED UNIT DEVELOPMENT RIDER

FHA Case No.
▮▮▮▮▮▮▮

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 5th                    day of
May, 2011                    , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the
same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to
FULTON BANK, N.A.

("Lender") of the same date and covering the Property described in the Security Instrument
and located at: 11713 BLACK ALDER DRIVE, MOSELEY, VA  23120

[Property Address]
The  Property  Address  is  a  part  of  a  planned  unit  development  ("PUD")  known  as

MAGNOLIA GREEN
[Name of Planned Unit Development]
PUD COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A.  So long as the Owners Association (or equivalent entity holding title to common
areas and facilities), acting as trustee for the homeowners, maintains, with a
generally accepted insurance carrier, a "master" or "blanket" policy insuring the
Property  located  in  the  PUD,  including  all  improvements  now  existing  or
hereafter erected on the mortgaged premises, and such policy is satisfactory to
Lender and provides insurance coverage in the amounts, for the periods, and
against the hazards Lender requires, including fire and other hazards included
within the term "extended coverage," and loss by flood, to the extent required
by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this
Security Instrument for the monthly payment to Lender of one-twelfth of the

---

FHA PUD Rider
VMP®
Wolters Kluwer Financial Services © 2008

VMP589U (0806)
Page 1 of 3
Initials: 

BOOK 9 4 1, 1 PAGE O 1 1 1

yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.   Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.   If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

FHA PUD Rider
VMP®
Wolters Kluwer Financial Services © 2008

VMP589U (0806)
Page 2 of 3
Initials: 

BOOK **9411** PAGE **0112**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_Angela A. Poole_ (Seal)                                    _____ (Seal)
ANGELA A POOLE        -Borrower                                          -Borrower


_____ (Seal)                                    _____ (Seal)
                      -Borrower                                          -Borrower


_____ (Seal)                                    _____ (Seal)
                      -Borrower                                          -Borrower


_____ (Seal)                                    _____ (Seal)
                      -Borrower                                          -Borrower


FHA PUD Rider                                              VMP589U (0806)
VMP®                                                       Page 3 of 3
Wolters Kluwer Financial Services © 2008                  Initials: _____

BOOK 9411 PAGE 0113

## SCHEDULE A

COMMITMENT NO: #▓▓▓▓▓▓

ALL that certain lot, piece or parcel of land, with improvements and appurtenances thereon, situate, lying and being in Chesterfield County, Virginia, and being known, numbered and designated as Lot 57, Section B, Magnolia Green, as shown on that certain plat entitled "Magnolia Green, Section B, Matoaca District, Chesterfield County", which said plat is duly recorded in the Clerk's·Office of the Circuit Court of Chesterfield County, Virginia, in Plat Book 186, pages 12 through 19.

BEING the same real estate conveyed to Angela A. Poole by deed from Royal Dominion Homes, Inc., a Virginia corproation, dated May 5, 2011 and recorded simultaneously herewith.

INSTRUMENT #16056
RECORDED IN THE CLERK'S OFFICE OF
CHESTERFIELD ON
MAY 6, 2011 AT 02:14PM

JUDY L. WORTHINGTON, CLERK
RECORDED BY: JDS